Filed 1/19/24  Williams v. Lucas CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| WILBUR WILLIAMS, JR et al., | B327061 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. |
| v. | No. 22STCV14857) |
| CAROL LUCAS et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed in part, reversed in part and remanded with directions.

Nick A. Alden for Plaintiffs and Appellants.

Loeb & Loeb and W. Allan Edmiston for Defendants and Respondents.

_____

Wilbur Williams, Jr., M.D.,[1] and his professional corporation, Wilbur Williams, Jr., M.D., Inc. (the Corporation; collectively, the Williams plaintiffs), appeal from an order of dismissal entered as to defendants Buchalter APC and Carol Lucas (collectively, the Buchalter defendants) after the trial court sustained without leave to amend the Buchalter defendants' demurrer to the complaint. The Williams plaintiffs asserted causes of action for conspiracy to defraud, financial elder abuse, and declaratory relief against the Buchalter defendants based on allegations that Lucas, an attorney and shareholder at Buchalter, conspired with Sevana Petrosian, who was Williams's business partner and managed several medical clinics where Williams conducted his medical practice, to deceive Williams into believing Buchalter represented him and to induce him to enter contracts that allowed Petrosian to embezzle more than $11 million dollars from the Corporation. In sustaining the demurrer, the trial court found all claims against the Buchalter defendants were barred by the one-year statute of limitations governing claims against an attorney "for a wrongful act or omission, other than actual fraud, arising in the performance of professional services" under Code of Civil Procedure section 340.6, subdivision (a).[2]

---

[1] Williams died during the pendency of this appeal. On May 12, 2023 we granted the motion of his widow Gail Dee Lew-Williams to be substituted in place of Williams as his successor in interest.

[2] All further undesignated statutory references are to the Code of Civil Procedure.

2

On appeal, the Williams plaintiffs contend the one-year statute of limitations under section 340.6, subdivision (a), does not apply to their claims because the gravamen of their action is actual fraud.  We agree the complaint sufficiently alleged the Buchalter defendants conspired to commit actual fraud, such that section 340.6 does not apply and the Corporation's conspiracy cause of action survives demurrer.  However, Williams's individual conspiracy claim fails because, as alleged, only the Corporation was defrauded.  Moreover, the complaint fails to state claims for financial elder abuse and declaratory relief.

We reverse the order of dismissal and the order sustaining the demurrer and direct the trial court to enter a new order overruling the demurrer to the Corporation's cause of action for conspiracy to defraud and sustaining without leave to amend the demurrer to the Corporation's remaining causes of action and Williams's cause of action for conspiracy to defraud.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *The Complaint*

The Williams plaintiffs filed this action on May 4, 2022 against the Buchalter defendants and Petrosian, her associates Salina Ranjbar, Vana Mehrabian, and Staforde Palmer, Petrosian's wholly owned company Petrosian Esthetic Enterprises LLC (Petrosian Esthetic), and seven limited liability companies Petrosian formed to operate individual medical spas under the name "SEV Laser Aesthetics" (the SEV companies;

3

collectively, the Petrosian defendants).[3]  The complaint alleged six causes of action, three of which were asserted against Lucas or the Buchalter defendants: the first cause of action for conspiracy to defraud, the third cause of action for financial elder abuse, and the sixth cause of action for declaratory relief.[4]

[3]     On September 22, 2021 the Williams plaintiffs filed a petition, including a draft complaint, seeking court approval to file an action against the Buchalter defendants for civil conspiracy with a client pursuant to Civil Code section 1714.10. (*Wilbur Williams, Jr., M.D., et al. v. Carol Lucas, et al.* (Super. Ct. Los Angeles County, 2021, No. 20STCP03133).)  On February 3, 2022 the trial court found the alleged conspiracy to defraud the Williams plaintiffs arose from "transactional activities" carried out by the Buchalter defendants and did not arise "from any attempt to contest or compromise a claim or dispute" within the scope of Civil Code section 1714.10, subdivision (a), and therefore the Williams plaintiffs could file their complaint without obtaining court approval.

[4]     The complaint also asserted causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and conspiracy to defraud against one or more of the Petrosian defendants.  The allegations asserted against these defendants overlap with allegations by the Williams plaintiffs in the related actions *Wilbur Williams, Jr., M.D., et al. v. Sevana Petrosian, et al.* (Super. Ct. Los Angeles County, 2020, No. 20STCV14137) and *Wilbur Williams, Jr., M.D., et al. v. Wells Fargo Bank, N.A.* (Super. Ct. Los Angeles County, 2020, No. 20STCV15993).

The Buchalter defendants request we take judicial notice of the Los Angeles Superior Court online case summaries for these related actions for the purpose of establishing the date on which the actions were filed.  The Buchalter defendants made a similar request in the trial court that the court take judicial notice of various pleadings in the related actions, but the court did not

4

As alleged in the complaint, in late 2013 Williams and Petrosian entered into discussions for Petrosian to act as the non-medical manager of medical spas where Williams would conduct his practice. Williams was then 77 years old and in apparent poor health. Williams and Petrosian "decided to act through their respective corporations." Williams's longstanding accountant, Leila Aquino, met with Petrosian to discuss the preparation of a contract that would govern the parties' arrangement and suggested a few law firms to assist them. However, Petrosian stated she already had contacted a lawyer, later identified as Lucas, "who agreed to represent both parties and prepare a contract that is fair to both parties." Petrosian set up a meeting with Lucas.

On April 12, 2014 Williams and Aquino met with Petrosian and Lucas at Buchalter's offices (April 12 meeting). Lucas did not tell Williams that she did not represent him, nor did she ask him if he was represented by counsel. Lucas's statements and conduct during the meeting led Williams and Aquino "to believe Petrosian's representations to them, that Lucas represented both Parties and prepared a fair contract." Lucas never disclosed that she had been representing Petrosian for over a year.

---

rule on their request. We deny the request to take judicial notice of any trial court records in the related actions because the records are not relevant to our resolution of this appeal. Because we find the Williams plaintiffs' claims were filed within the applicable statute of limitations, we do not reach the Buchalter defendants' arguments that the pleadings in the related actions contain admissions bearing on accrual of the Williams plaintiffs' claims.

5

During the meeting, Lucas had in front of her a "Management Services Agreement" that she referred to a few times. She briefly explained to Williams that the laws governing the corporate practice of medicine prohibit non-physicians from owning a medical practice, and then she "immediately moved to convince and advise Dr. Williams to grant [Petrosian Esthetic] a power of attorney and Petrosian the right to sign checks and to pay bills," explaining this would be necessary for Petrosian Esthetic to operate a clinic, collect patient payments, and make bank deposits on behalf of Williams's medical practice. "In reliance on Petrosian's representation that Lucas represented both Parties and prepared a fair contract, reinforced by Lucas's conduct and statements during the meeting," on April 12, 2014 Williams signed the management services agreement without reading it.

A copy of the executed management services agreement between the Corporation and Petrosian Esthetic was attached to the complaint. The recitals state the Corporation "desires to engage the services of [Petrosian Esthetic] to perform certain non-professional functions for [the Corporation], in order to permit [the Corporation] to concentrate its efforts on the Practice.'" The "Practice" was defined as the provision of medical cosmetic services at medical spa locations in Glendale and West Hollywood. Under the agreement, the Corporation appointed Petrosian Esthetic as its attorney-in-fact for a wide range of non-medical functions, including collecting payments, making deposits, and other banking functions on the account of the Corporation (including making payments to Petrosian Esthetic for management services and expenses). Petrosian Esthetic was responsible for providing numerous services on behalf of the

6

Corporation with respect to the practice, including accounting, financial, and legal services, the employment of non-physician personnel, providing and maintaining furniture, fixtures and equipment, and marketing. The agreement also provided Petrosian Esthetic would sublease space to the Corporation. Under the agreement, a copy of any notices served pursuant to the agreement would be sent to the attention of Lucas at Buchalter's Los Angeles office.

The complaint alleged on information and belief that "from the onset Lucas knew of Petrosian's intent to own the Practice, take all the profits and pay Dr. Williams some kind of salary and, upon termination of the agreement, Petrosian intended to take over the Practice," and Lucas drafted the management services agreement "in a way to allow Petrosian to achieve her intended scheme."

Beginning in 2016 the medical practice expanded to seven new clinic locations, and Lucas, on behalf of Petrosian, formed and registered the SEV companies, one for each new location. Each of the SEV companies then entered into a management services agreement with the Corporation regarding Williams's medical practice at the individual locations. Relying on Petrosian's representation that the seven management services agreement were identical to the April 12, 2014 management services agreement and that they were prepared by Lucas, Williams signed each agreement on behalf of the Corporation, again without reading the agreements. Each of the management services agreements provided that the respective SEV company would be entitled to actual out-of-pocket costs in providing

7

management services plus a management fee of 15 percent of those costs.[5]

In January 2020 the Corporation received a tax form from its credit card processing company indicating the practice had collected credit card payments exceeding $7.5 million in 2019, although in 2019 the Williams plaintiffs had only received $155,000 from the Petrosian defendants. Petrosian had claimed the $155,000 was the net profit from operations. Williams was surprised by the disparity and consulted an attorney in February 2020. With the help of an accountant, Williams reviewed the Corporation's bank records and determined gross income to the Corporation during 2019 exceeded $10.2 million, with estimated profits of about $6 million.

On February 17, 2020 the parties mutually agreed to terminate their relationship effective April 30, 2020. Following the termination, Petrosian allegedly "took over" the entire practice, including the equipment, patients and employees, without compensating Williams, and she denied Williams access to the clinics. The Petrosian defendants relied on a provision of the management services agreements to claim ownership of the practice.[6]

---

[5] A copy of the October 29, 2018 management services agreement between the Corporation and SEV Laser Aesthetics-San Jose, LLC was attached to the complaint as an example of the post-2018 management services agreements the Corporation entered into with the SEV companies.

[6] Paragraph 4.8 of the management services agreement provides, "[Petrosian Esthetic] has the legal right to occupy the space occupied by the Practice . . . and grants to [Corporation] the

The Williams plaintiffs calculated that between January 1, 2017 and March 31, 2020, the practice generated gross revenues of about $20 million, with estimated overhead of $8 million, but they only received about $400,000 in purported net profits during this period. The complaint alleges on this basis the Petrosian defendants embezzled about $11.4 million from the Corporation.

Moreover, in early 2020 the Petrosian defendants withdrew about $2.2 million from the Corporation's bank accounts, including more than $700,000 in cash withdrawals. In response to an inquiry from the Williams plaintiffs' attorney about the withdrawals, Lucas stated the funds were charged by Petrosian as a "license fee," and Lucas produced a set of agreements executed in 2019 between the SEV companies and Petrosian Esthetic under which each SEV company licensed the intellectual property relating to the "SEV Laser" brand from Petrosian Esthetic. Williams was previously unaware of these agreements, under which the Petrosian defendants collected $2.1 million a year in intellectual property license fees.

Lucas denied ever representing Williams or the Corporation, and she denied preparing the management services agreements. Lucas also claimed Buchalter had never billed the Corporation for legal services. However, in 2017 Petrosian Esthetic paid nearly $8,000 to Buchalter, and in 2018 two of the SEV companies paid nearly $30,000 in "legal fees" to the firm. Thus, "Lucas has been paid dozens of thousands of dollars every year by the [p]ractice of Dr Williams, at the same time Lucas was

_____

right to use the Premises for the Practice for as long as this Agreement remains in effect (the 'Sublease')."

9

conspiring with Petrosian against Dr. Williams and his [p]ractice."

The first cause of action for conspiracy to defraud sought to void the management services agreements based on Lucas's and Petrosian's false inducements to cause Williams to enter the agreements; damages exceeding $11 million for the embezzlement of Corporation funds pursuant to the agreements and the overbroad powers of attorney granted to the Petrosian defendants therein; damages for the severe emotional distress Williams suffered as a result of the defendants' scheme; punitive and exemplary damages based on the defendants' malice; and enhanced damages pursuant to Welfare and Institutions Code section 15657.5.

The third cause of action for financial elder abuse pursuant to Welfare and Institutions Code section 15610 is based on the same factual allegations regarding the Buchalter defendants' conduct. The sixth cause of action for declaratory relief, although asserted against both the Buchalter defendants and the Petrosian defendants, alleges "[a]n actual controversy exists between Plaintiffs and the [Petrosian defendants]. Plaintiffs contend that the [Petrosian defendants] should be held liable for Plaintiffs losses of about $11.5 million. Plaintiffs also contend that they own the Practice, the leases to the clinics, the equipment and the electronic communication, as well as the website. Plaintiffs also contend that they are entitled to all the income generated from the Practice since May 1, 2020. Defendants contend otherwise."

10

B. *The Buchalter Defendants' Demurrer and the Trial Court's Order*

On July 15, 2022 the Buchalter defendants demurred to all causes of action in the complaint. They argued the claims against them were barred under the one-year statute of limitations in section 340.6, subdivision (a), which governs claims "for a wrongful act or omission, other than actual fraud, arising in the performance of professional services" by an attorney. They asserted that, as alleged in the complaint, the Williams plaintiffs' claims accrued no later than February 17, 2020, when the parties agreed to terminate their relationship based on disputes over payments to the Corporation, but the claims against the Buchalter defendants were not filed until May 2022.

The Buchalter defendants also argued with respect to the conspiracy cause of action that the Williams plaintiffs failed to sufficiently allege the Buchalter defendants were aware of, or knowingly agreed to a "'common and unlawful plan'" to embezzle money from the Williams plaintiffs. Rather, "[t]hey simply allege that Buchalter performed legal services—such as forming LLCs, participating in an exchange of information regarding a proposed business arrangement during an April 12, 2014 meeting, and drafting agreements—for its client, Sevana Petrosian." Moreover, the "agent's immunity rule" shielded the Buchalter defendants from liability for acts of misconduct performed as an agent of Petrosian, because the Buchalter defendants did not owe an independent legal duty to Williams, and further, their acts did not "'go beyond the performance of a professional duty to serve the client and [did not] involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain.'" In addition, Williams's individual claim for conspiracy failed because the

11

complaint did not allege harm he suffered given that all of the funds were allegedly embezzled from the Corporation.

Similarly, the complaint failed to state a cause of action for financial elder abuse because the complaint alleged embezzlement of money only from the Corporation, not from Williams personally. Finally, the declaratory relief cause of action did not seek a declaration of rights to prevent a future breach; rather, it sought redress for alleged past wrongs.

In their opposition, the Williams plaintiffs argued the complaint adequately alleged a conspiracy to embezzle funds, and the Buchalter defendants were not insulated by the agent's immunity rule because the complaint alleged tortious and fraudulent acts by Lucas that "went far beyond the performance of a professional duty to serve the client." (Capitalization omitted.) Financial elder abuse was actionable because Williams was the sole shareholder of the Corporation, and "all the funds deposited in the [the Corporation] were generated by his medical practice." The interests of Williams and the Corporation "fully coincide," and the two "should not be regarded as legally distinct." Declaratory relief was proper because the complaint had the prospective effect "to stop any further misappropriation of the income" from the medical practice. Finally, the one-year statute of limitations in section 340.6 did not apply to the claims in the complaint because the complaint did not allege a cause of action for legal malpractice.

In their reply, the Buchalter defendants argued, in part, that section 340.6 is not limited to claims for legal malpractice but instead governs any claim, however styled, that depends on proof that an attorney violated a professional obligation in the

12

course of providing professional services, as explained by the Supreme Court in *Lee v. Hanley* (2015) 61 Cal.4th 1225 (*Lee*).

At the September 12, 2022 hearing on the demurrer, the trial court announced its tentative ruling was to sustain the demurrer without leave to amend.[7]  The court stated, "I do think the one-year statute of limitations applies based on the *Lee versus Hanley* case.  And . . . according to your allegations you discovered the facts at the latest on February 17th of 2020, but didn't file the suit until May 4th of 2022, which was over a year later."  After hearing argument of counsel, the court adopted its tentative ruling and sustained the demurrer to the causes of action for conspiracy, financial elder abuse, and declaratory relief without leave to amend.

On September 12, 2022 the trial court entered an order of dismissal in favor of the Buchalter defendants.  The Williams plaintiffs timely appealed.[8]

---

[7]  We previously deemed the Williams plaintiffs' September 1, 2023 motion to augment the record to include the reporter's transcript of the September 12, 2022 hearing as a motion to designate the record on appeal but deferred a ruling on the motion.  We now grant the motion.

[8]  The Williams plaintiffs' notice of appeal states they are appealing from a judgment of dismissal after an order sustaining a demurrer.  Although no judgment was entered, "[t]he order of dismissal, signed by the trial court and entered by the court clerk, constitutes a judgment under Code of Civil Procedure section 581d." (*Moorer v. Noble L.A. Events, Inc.* (2019) 32 Cal.App.5th 736, 741, fn 3; see § 581d ["All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes . . . ."].)

13

**DISCUSSION**

A.      *Standard of Review*

        "'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) When evaluating the complaint, "we assume the truth of the allegations." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209; accord, *Lee , supra*, 61 Cal.4th at p. 1230; see *Marina Pacific Hotel and Suites, LLC v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96, 104-105 ["'[W]e accept as true even improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove [the] factual allegations.'"].)

        "'"[A] demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense."'" (*Silva v. Langford* (2022) 79 Cal.App.5th 710, 716; see *Lee, supra*, 61 Cal.4th at p. 1232 ["'"A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint."'"].) If "'the complaint's allegations or judicially noticeable facts reveal the existence of an affirmative defense, the "plaintiff must 'plead around' the defense, by alleging specific facts that would avoid the apparent defense."'" (*Esparza v. County of Los Angeles* (2014) 224 Cal.App.4th 452, 459.) The application of an affirmative defense on demurrer based on facts alleged in the complaint, such as the statute of limitations, is

14

subject to de novo review. (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)

A dismissal entered after a demurrer has been sustained without leave to amend "will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324; accord, *Ko v. Maxim Healthcare Services, Inc.* (2020) 58 Cal.App.5th 1144, 1150.)

B.      *The Trial Court Erred in Sustaining the Demurrer Based on the One-year Statute of Limitations Governing Attorney Misconduct*

Section 340.6, subdivision (a), provides in relevant part, "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission . . . ." The Williams plaintiffs contend that contrary to the trial court's ruling, section 340.6, subdivision (a), does not apply to their claims because the complaint alleges the Buchalter defendants engaged in fraud and embezzlement. The Buchalter defendants argue the claims against them arise solely from their performance of legal services for their client, Petrosian, and the "actual fraud" exception in section 340, subdivision (a), does not apply. The Williams plaintiffs have the better argument.[9]

---

[9]      Because we find section 340.6, subdivision (a), does not apply, we do not reach the Williams plaintiffs' argument their claims accrued later than February 2020 and were timely even

15

In *Lee, supra*, 61 Cal.4th at pages 1233 to 1236, the Supreme Court examined the scope of section 340.6, subdivision (a), in considering whether the trial court properly sustained without leave to amend on statute of limitations grounds the demurrer filed by an attorney (William Hanley) to the complaint filed by his client (Nancy Lee) in an action to recover unspent attorneys' fees where Lee alleged Hanley converted the funds by refusing to return them after Lee terminated him. The Supreme Court held after examining the legislative history that "section 340.6(a)'s time bar applies to claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services. In this context, a 'professional obligation' is an obligation that an attorney has by virtue of being an attorney, such as fiduciary obligations, the obligation to perform competently, the obligation to perform the services contemplated in a legal services contract into which an attorney has entered,

_____

under a one-year limitations period. The statutes of limitations applicable here are all three years or longer: three years for conspiracy to commit fraud or embezzlement (§ 338, subds. (c)(1), (d); see *Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.* (1989) 208 Cal.App.3d 1297, 1309 [timeliness of a civil conspiracy claim "must be determined by reference to the statute of limitations applicable to the underlying cause of action"]); four years for financial elder abuse (Welf. & Inst. Code, § 15657.7; *Dennison v. Rosland Capital LLC* (2020) 47 Cal.App.5th 204, 212); and three or four years for declaratory relief (*Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 943 ["A claim for declaratory relief is subject to the same statute of limitations as the legal or equitable claim on which it is based."]). It is undisputed the complaint was filed within three years of accrual of the claims.

16

and the obligations embodied in the Rules of Professional Conduct." (*Lee*, at pp. 1236-1237.)

By contrast, the *Lee* court reasoned, "[S]ection 340.6(a) does not bar a claim for wrongdoing—for example, garden-variety theft—that does not require proof that the attorney has violated a professional obligation, even if the theft occurs while the attorney and the victim are discussing the victim's legal affairs." (*Lee, supra*, 61 Cal.4th at p. 1237.) Moreover, section 340.6 does not apply merely because an attorney's misconduct "occurs during the period of legal representation or because the representation brought the parties together and thus provided the attorney the opportunity to engage in the misconduct. . . . Nor does section 340.6(a) necessarily apply whenever a plaintiff's allegations, if true, would entail a violation of an attorney's professional obligations. The obligations that an attorney has by virtue of being an attorney are varied and often overlap with obligations that all persons subject to California's laws have. . . . For purposes of section 340.6(a), . . . the question is whether the claim, in order to succeed, necessarily depends on proof that an attorney violated a professional obligation as opposed to some generally applicable nonprofessional obligation." (*Lee*, at p. 1238.)[10]

---

[10] The Supreme Court in *Lee, supra*, 61 Cal.4th at page 1236 emphasized that section 340.6, subdivision (a), was designed "so that the applicable limitations period for such claims would turn on the conduct alleged and ultimately proven, not on the way the complaint was styled," citing appellate decisions applying section 340.6. subdivision (a), to malpractice-based claims against attorneys styled as claims for breach of fiduciary duty (e.g., *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014)

Based on these principles, the *Lee* court held the trial court erred in sustaining the demurrer to Lee's complaint without leave to amend because although "Lee's allegations, if true, would show that Hanley has violated certain professional obligations in the course of providing professional services" (and any claim based on this violation would be time-barred), the complaint could "also be construed to allege a claim for conversion whose ultimate proof at trial may not depend on the assertion that Hanley violated a professional obligation. Thus, on at least one reasonable construction of the complaint, at least one of Lee's claims is not time-barred." (*Lee, supra*, 61 Cal.4th at pp. 1229-1230; see *id.* at p. 1240 ["Of course, Lee's allegations, if true, may also establish that Hanley has violated certain professional obligations, such as the duty to refund unearned fees at the termination of the representation (Cal. Rules of Prof. Conduct, rule 3-700(D)(2)), just as an allegation of garden-variety theft, if true, may also establish a violation of an attorney's duty to act with loyalty and good faith toward a client."].)

The trial court here erred in finding the Supreme Court's decision in *Lee* required application of section 340.6, subdivision (a). The complaint, like the complaint in *Lee*, can be reasonably construed to allege Lucas violated obligations she owed to the Williams plaintiffs under California law not to defraud them, and not simply her professional obligations as an attorney. The central allegations against the Buchalter defendants are that Lucas "knew of Petrosian's intent to own the

223 Cal.App.4th 1105, 1121-1122), malicious prosecution (e.g., *Yee v. Cheung* (2013) 220 Cal.App.4th 184, 195-196), and breach of contract (e.g., *Southland Mechanical Constructors Corp. v. Nixen* (1981) 119 Cal.App.3d 417, 427).

18

Practice, take all the profits and pay Dr. Williams some kind of salary and, upon termination of the agreement, Petrosian intended to take over the Practice," and Lucas drafted the management services agreement "in a way to allow Petrosian to achieve her intended scheme."[11] Specifically, Lucas knew Williams had been misinformed by Petrosian that Lucas was representing both parties, Lucas perpetuated the mispresentation during the April 12 meeting through her words and conduct, and she took advantage of the misrepresentation to induce Williams to sign the management services agreements and to execute powers of attorney. Contrary to the argument by the Buchalter defendants, the allegations that Lucas conspired with Petrosian to deceive and defraud Williams go beyond the performance of ordinary legal services.[12]

---

[11] Buchalter does not dispute its liability for Lucas's conduct under principles of respondeat superior.

[12] The Buchalter defendants also argue that Williams's claims must fail because the Buchalter defendants did not "derive any personal financial benefit from [their] legal work 'over and above' and 'monetary compensation' that Buchalter received as payment for professional services." But "'"[i]t is not essential to liability that the person charged with fraud should have received any benefit therefrom."'" (*Fort v. Board of Medical Quality Assurance* (1982) 136 Cal.App.3d 12, 19-20; accord, *Lone Star Security & Video, Inc. v. Bureau of Security & Investigative Services* (2012) 209 Cal.App.4th 445, 457.)

Certainly, Lucas's alleged misconduct could constitute violations of her professional obligations, "such as fiduciary obligations, the obligation to perform competently, the obligation to perform the services contemplated in a legal services contract . . . and the obligations embodied in the Rules of Professional Conduct" (*Lee, supra*, 61 Cal.4th at p. 1237), and further, the misconduct occurred in the course of Lucas's legal representation, which provided the opportunity to deceive Williams (*id.* at p. 1238). But the Williams plaintiffs do not need to prove any professional violation to prevail. Rather, they have alleged a garden-variety fraudulent scheme. Indeed, the complaint would be essentially unchanged if Lucas were simply an actor who came to the April 12 meeting pretending to be a lawyer who would protect Williams's interests, while tricking Williams into signing the agreement. This would be consistent with the allegation in the complaint that Lucas's statements and conduct during the meeting led the Williams plaintiffs to believe she drafted the management services agreement.

Moreover, as we discuss below, the first cause of action for conspiracy to defraud adequately states a claim for intentional fraud; thus, even if the claim arose from the provision of legal services, the claim falls within the "actual fraud" exception in section 340.6. (See *Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 69-70 ["the exception for actual fraud in section 340.6 was intended to apply to intentional fraud, not constructive fraud resulting from negligent misrepresentation"]; accord, *Nguyen v. Ford* (2020) 49 Cal.App.5th 1, 17 [same].) The Buchalter defendants do not cite, and we are not aware of any, case holding that an otherwise sufficient cause of action for intentional fraud by an attorney is subject to section 340.6's one-

20

year statute of limitations. (Cf. *Lee*, *supra*, 61 Cal.4th at p. 1239 ["Section 340.6(a) applies to claims that necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services unless the claim is for actual fraud."].)

C.    *The Complaint Adequately Pleaded the First Cause of Action for Conspiracy To Defraud*

"Civil conspiracy is not an independent tort. [Citation.] 'Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort.'" (*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 206 (*Favila*); accord, *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 511.) "'[T]he basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act.' [Citations.] The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose." (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1582; accord, *Favila*, at p. 206.) "Knowledge and intent "'may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances.""'" (*Favila*, at p. 206.)

The elements of fraud are (1) a misrepresentation; (2) knowledge of its falsity; (3) intent to induce another's reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damage. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255; *Cohen v. Kabbalah Centre Internat., Inc.* (2019) 35 Cal.App.5th 13, 20.) To survive a

21

demurrer, a plaintiff must allege facts constituting each element of fraud with particularity. (*Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23, 35; *Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 993 ["fraud must be pled specifically; general and conclusory allegations do not suffice"].) """"This particularity requirement necessitates pleading facts which 'show how, when, where, to whom, and by what means the representations were tendered.'""" (*People ex rel. Allstate Insurance Company v. Discovery Radiology Physicians, P.C.* (2023) 94 Cal.App.5th 521, 548; see *Robinson*, at p. 993 ["This particularity requirement necessitates pleading *facts* which 'show how, when, where, to whom, and by what means the representations were tendered.'""].)

Here, the complaint alleges each element of fraud with adequate particularity: (1) in advance of the April 12 meeting at Buchalter, the Petrosian defendants misrepresented to Williams that Lucas represented both parties and drafted a fair agreement to allow Petrosian to be the business manager of Williams's practice; (2) Petrosian and Lucas knew this to be false, and Lucas knew that Petrosian intended "to own the [p]ractice, take all the profits and pay Williams some kind of salary and, upon termination of the agreement, Petrosian intended to take over the practice"; (3) Lucas intended to induce Williams's reliance by failing at the April 12 meeting to disclose that Buchalter previously represented Petrosian, making statements and acting in a manner that led Williams to believe she was representing him,[13] representing that the management service agreement and

---

[13] Although the allegation that Lucas made statements at the meeting and acted in a manner that led Williams to believe she

powers of attorney were necessary for Petrosian to manage the practice while misrepresenting the laws regulating the corporate practice of medicine; (4) Williams, who was elderly and in apparent poor health, "reinforced by [Lucas's] conduct in the meeting, . . . was convinced by Lucas's arguments and executed the MSA without reading it"; and (5) the Corporation was damaged through the diversion of the practice's income and theft of its assets.  Moreover, the complaint specifically alleged Lucas had actual knowledge of the fraudulent scheme and coordinated with Petrosian to achieve its purposes, supporting conspiracy liability.  (*Favila, supra*, 188 Cal.App.4th at p. 206.)

The Buchalter defendants contend the cause of action for conspiracy to commit fraud is barred by the agent's immunity rule.  Under the agent's immunity rule, "[a] cause of action for civil conspiracy may not arise . . . if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty."  (*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44 (*Doctors' Co.*); accord, *Favila, supra*, 188 Cal.App.4th at p. 208.)  In *Doctors' Co.*, the Supreme Court held that the claimant, whose malpractice claims against his doctor were successfully tried to a jury, could not state a claim against the attorney for the doctor's insurer and the insurer's expert for conspiring with the insurer to violate an Insurance Code

---

was representing him lacks sufficient particularity, standing alone, to allege the inducement element, it is sufficient in combination with the allegation that Lucas falsely advised Williams that he had to sign the management services agreement and powers of attorney for Petrosian to manage the practice.

provision requiring good faith efforts to settle a valid claim "[b]ecause the noninsurer defendants [(the attorney and expert)] are not subject to that duty [under the Insurance Code] and were acting merely as agents of the insurer 'and not as individuals for their individual advantage.'" (*Doctors' Co.*, at p. 45.) But the court clarified, "It remains true, of course, that under *other* sets of circumstances '[attorneys] may be liable for participation in tortious acts with their clients, and such liability may rest on a conspiracy' [citations]. For example, an attorney who conspires to cause a client to violate a statutory duty peculiar to the client may be acting not only in the performance of a professional duty to serve the client but also in furtherance of the attorney's own financial gain." (*Id.* at p. 46.) Also, a claim may lie "against an attorney for conspiring with his or her client to cause injury by violating the attorney's own duty to the plaintiff." (*Id.* at p. 47.)

Shortly after the Supreme Court decided *Doctors' Co.*, the Legislature amended Civil Code section 1714.10 (setting forth prefiling requirements for certain claims against an attorney alleging a civil conspiracy with his or her client) to add subdivision (c), which sets forth the two exceptions to the agent's immunity rule articulated in *Doctors' Co.* and provides that they are likewise exceptions to the prefiling requirements for civil conspiracy claims. Under subdivision (c), the prefiling requirements do not apply to a cause of action "against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute" where: "(1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a

24

professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." (Civ. Code, § 1714.10, subd. (c); see *Favila, supra*, 188 Cal.App.4th at p. 209.)[14]

The allegations of the complaint are sufficient to establish the conspiracy claim is not barred by the agent's immunity rule because Lucas (and Buchalter) had an independent legal duty not to defraud Williams. As discussed, the complaint alleges Lucas schemed to defraud the Williams plaintiffs by her statements and conduct at the April 12 meeting, which led Williams to believe she represented him and Petrosian, and she induced Williams to believe the management services agreement and broad powers of attorney were necessary for Petrosian Esthetic to operate the medical clinic. "It is well established that an attorney has an independent legal duty to refrain from defrauding nonclients." (*Rickley v. Goodfriend* (2013) 212 Cal.App.4th 1136, 1151 [Civil Code section 1714.10 did not apply because attorneys had an independent legal duty to third parties when holding client funds in a trust account with respect to dispersal of the funds to the clients and third parties]; see *id.* at p. 1153 ["A license to practice law does not shield an attorney from liability when he or she engages in conduct that would be actionable if committed by a layperson. An attorney who commits such conduct may be liable

---

[14] Although the Buchalter defendants in their demurrer argued the Williams plaintiffs' civil conspiracy claim was barred by the agent's immunity rule under Civil Code section 1714.10, as we observed in *Favila, supra*, 188 Cal.App.4th at page 209, Civil Code section 1714.10 only applies to the prefiling requirement, providing "at best, . . . only an additional procedural safeguard against meritless claims."

under a conspiracy theory when the attorney agrees with his or her client to commit wrongful acts."]; accord, *Burtscher v. Burtscher* (1994) 26 Cal.App.4th 720, 727 [Civil Code section 1714.10 did not apply because "attorney Hobbs resorted to self-help . . . in going onto the property and unilaterally retaking possession in circumstances where a lawyer would be serving a notice to quit, filing an unlawful detainer action and getting a court order. Hobbs actively participated in conduct that went way beyond the role of legal representative: self-help is not the practice of law."].)

D.    *Williams Fails To State an Individual Cause of Action for Conspiracy To Defraud the Corporation*

In their demurrer the Buchalter defendants argued, as they do on appeal, that Williams cannot state an individual cause of action for conspiracy because the complaint does not allege any harm to him personally from the conspiracy: instead, the parties are alleged to have "acted through their respective corporations," and all of the revenues and assets of the practice were taken from Corporation.[15] The Williams plaintiffs did not address this argument in their opposition to the demurrer, and they do not address it in their opening or reply briefs on appeal. They have

---

[15]    The complaint includes a conclusory allegation that Williams suffered "severe emotional distress" as a result of the Buchalter defendants' misconduct, seeking damages on that basis. But there are no particularized allegations as to how the Buchalter defendants caused emotional distress and how the distress manifested. In any event, the Williams plaintiffs do not argue the emotional distress allegation is sufficient to support an individual claim.

therefore forfeited this contention.  (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal "deemed waived"]; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 [""""Issues not raised in an appellant's brief are [forfeited] or abandoned.""""].)  Although the trial court did not reach the issue, the demurrer to Williams's individual cause of action for conspiracy to defraud was properly sustained.  (*Carman v. Alvord, supra*, 31 Cal.3d at p. 324.)

E.    *The Complaint Fails To State a Cause of Action for Financial Elder Abuse*

Financial elder abuse occurs when a person "[t]akes, secretes, appropriates, obtains or retains real or personal property of an elder," or assists in these activities, either "for a wrongful use or with intent to defraud, or both," or "by undue influence."  (Welf. & Inst. Code, § 15610.30, subds. (a)(1), (3).)  An "'[e]lder'" is "any person residing in this state, 65 years of age or older."  (*Id*., § 15610.27.)

The complaint fails to state a claim for financial elder abuse because it does not allege funds were taken from a person over 65—as alleged, the unauthorized withdrawals, embezzled profits, and misappropriated assets were all taken from the Corporation.[16]  "It is fundamental that a corporation is a legal

_____

[16]    There are circumstances in which the taking of property not held directly by an elder may be actionable.  (See Welf. & Inst. Code, § 15610.30, subd. (c) [financial elder abuse occurs "when an elder or dependent adult is deprived of any property right . . . , regardless of whether the property is held directly or by a representative of an elder or dependent adult."].)  However,

27

entity that is distinct from its shareholders." (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108; accord, *Presta v. Tepper* (2009) 179 Cal.App.4th 909, 914 [a corporation is a ""distinct legal entity separate from its stockholder and from its officers"""]; see *Hilliard v. Harbour* (2017) 12 Cal.App.5th 1006, 1015 [plaintiff did not have standing to sue for financial elder abuse because his claim did not "originate in circumstances independent of his status as a shareholder in the [c]ompanies, and his claim therefore cannot be deemed personal"].)

The Williams plaintiffs argued in their opposition to the demurrer to the elder abuse claim that the trial court should treat the alleged embezzlement from the Corporation as if the funds were taken from Williams because Williams was the sole owner of the Corporation, their interests "fully coincide," and the two "should not be regarded as legally distinct." On appeal, they cite general authorities defining alter ego liability. The Williams plaintiffs misapprehend the alter ego doctrine.

""Under the alter ego doctrine, . . . where a corporation is used by an individual or individuals, or by another corporation, to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation.""

---

a "'representative'" is narrowly defined as "a person or entity that is either . . . : [¶] (1) [a] conservator, trustee, or other representative of the estate of an elder or dependent adult [or] [¶] (2) [a]n attorney-in-fact of an elder or dependent adult who acts within the authority of the power of attorney." (*Id.*, § 15610.30, subd. (d).) The Corporation does not fall within this definition of a representative.

28

(*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1106; accord, *Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510, 1517-1518.) "Thus, alter ego is used to prevent a corporation from using its statutory separate corporate form as a shield from liability only where to recognize its corporate status would defeat the rights and equities of third parties; it is not a doctrine that allows the persons who actually control the corporation to disregard the corporate form." (*Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 994; accord, *Butler America, LLC v. Aviation Assurance Co. LLC* (2020) 55 Cal.App.5th 136, 147.)

As alleged, Williams and Petrosian "decided to act through their respective corporations," and the Buchalter defendants fraudulently induced Williams to enter into the management services agreements and execute powers of attorney on behalf of the Corporation. The Petrosian defendants withdrew money from the Corporation's bank accounts, overbilled the Corporation for management services and reimbursements, and claimed ownership of the Corporation's assets. The complaint does not allege the Corporation is Williams's alter ego, and the fact Williams was the sole owner of the Corporation does not make the Corporation his alter ego, let alone bring a corporation within the scope of the elder abuse law.

F.    *The Complaint Fails To State a Cause of Action for Declaratory Relief Against the Buchalter Defendants*

"'A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties under a written instrument or with respect to property and requests that

29

the rights and duties of the parties be adjudged by the court.'" (*Market Lofts Community Assn. v. 9th Street Market Lofts, LLC* (2014) 222 Cal.App.4th 924, 931.) "'Declaratory relief operates prospectively, serving to set controversies at rest. If there is a controversy which calls for a declaration of rights, it is no objection that past wrongs are also to be redressed; but there is no basis for declaratory relief where only past wrongs are involved.'" (*Baldwin v. Marina City Properties, Inc.* (1978) 79 Cal.App.3d 393, 407; accord, *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1403.) The remedy of declaratory relief is unavailable where a "plaintiff has a fully matured cause of action for money, if any cause exists at all." (*Jackson v. Teachers Ins. Co.* (1973) 30 Cal.App.3d 341, 344; accord, *Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1497 ["Where, as here, a party has a fully matured cause of action for money, the party must seek the remedy of damages, and not pursue a declaratory relief claim."].)

The complaint alleges the Petrosian defendants, aided by the Buchalter defendants, embezzled money from the Corporation and, after the April 30, 2020 termination of the relationship, used the management services agreements to exclude Williams and take over the practice. The declaratory relief cause of action alleges a controversy exists "between the Plaintiffs and the Petrosian Defendants" (a defined term in the complaint that does not include the Buchalter defendants) because the Williams plaintiffs contend they sustained losses of $11.5 million, they own the practice, including the leases, equipment, and intangible property, and they "are entitled to all

30

the income generated from the [p]ractice since May 1, 2020," whereas the defendants dispute those contentions.

The complaint therefore fails to allege an actual controversy respecting prospective rights between the Williams plaintiffs and the Buchalter defendants. The Buchalter defendants' alleged role in defrauding the Corporation may be redressed with damages. To the extent there is a prospective dispute about ownership of the practice and future revenues it may generate, this dispute lies with the Petrosian defendants, not the Buchalter defendants. There is no allegation the Buchalter defendants have asserted any interest in the practice and its assets.[17]

## DISPOSITION

The order of dismissal is reversed. The matter is remanded to the trial court with directions to vacate the order sustaining the demurrer to the complaint without leave to amend and to enter a new order overruling the demurrer as to the first cause of action for conspiracy to commit fraud asserted by the Corporation but sustaining the demurrer without leave to amend as to the first cause of action for conspiracy to commit fraud asserted by Williams individually, the third cause of action for financial elder abuse, and the sixth cause of

---

[17] The Williams plaintiffs do not request leave to amend their individual cause of action for conspiracy to defraud or their causes of action for financial elder abuse and declaratory relief, nor do they articulate how they could amend their complaint.

31

action for declaratory relief.  The parties are to bear their own costs on appeal.


                              FEUER, J.

We concur:


        SEGAL, Acting P. J.


        MARTINEZ, J.